UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/2025
```

-----------------------------------------------------------------------X
                                                                       :
MERA ROMERO, et al.,                                                   :
                                                                       :
                                  Plaintiffs,                          :
                                                                       :                25-cv-06912 (LJL)
                                                                       :
                       -v-                                             :          OPINION AND ORDER
                                                                       :
GARNER ENVIRONMENTAL SERVICES, INC., et al.,                          :
                                                                       :
                                  Defendants.                          :
                                                                       :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants Bermudez Ortega LLC (d/b/a Bermudez Ortega Contractors), Lola's Branch

LLC (d/b/a Lola's B Environment Solutions), LB Environment Cleaning Solutions Inc. (d/b/a

LB Environment Solutions Inc.) (collectively "Corporate Defendants") and Indira Ortega

("Ortega") and Edwin Bermudez ("Bermudez," and with Ortega, "Individual Defendants")

move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the third, fourth, fifth,

sixth and seventh claims against them. Dkt. No. 30. Defendant Garner Environmental Services

Inc. ("Garner," and collectively with Corporate Defendants and Individual Defendants,

"Defendants") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the

complaint against it. Dkt. No. 40. For the reasons that follow, the motion is granted in part and

denied in part.

## BACKGROUND

Plaintiffs Mario Mera Romero, William Steven Duque Forero, Joffre Laya Yamarte,

Cristian Olivero Sanchez, Sergio Carvajal, and Wuilley Yeen Zabala Nieto ("Plaintiffs")[1] are

---

[1] Tommy Anthony Calderon was also named as a Plaintiff, but he dismissed his claim on
December 9, 2025. Dkt. No. 65.

individuals who were employed as housekeepers of cleaning corporations doing work on a publicly-funded cleaning project (the "Cleaning Project") at 825 East 141st Street in the Bronx, New York.[2] Dkt. No. 1 ("Compl.") ¶¶ 4, 17–23, 27–29, 42, 44–45, 57–58, 73–74 , 86–87, 99–100, 115–16, 128–29.

Defendants own, operate, or control four government facility cleaning companies contracted to work at the Cleaning Project under the name "Garner Environmental Services, Inc." *Id.* ¶¶ 25, 32. Defendants employed Plaintiffs to work at the Cleaning Project. *Id.* ¶ 2. Bermudez Ortega LLC, Lola's Branch, LLC, and LB Environment Cleaning Solutions Inc. are each New York corporations which employed Plaintiffs to work at the Cleaning Project. *Id.* ¶¶ 27–29. Garner is also a New York corporation. *Id.* ¶ 26. Plaintiffs allege that Individual Defendants Ortega and Bermudez were both "owner[s], officer[s] and/or agent[s] of Defendant Corporation[s]." *Id.* ¶¶ 30–31; *see also id.* ¶ 33.

Plaintiffs allege that Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of forty hours a week without paying them appropriate prevailing wages and overtime compensation as required by federal and state laws. *Id.* ¶ 145. Plaintiffs also allege that Defendants failed to provide them and other employees with accurate wage statements at the time of their payment of wages containing, among other things, the dates of work covered by that payment of wages, the names of the employee and employer, the employer address and phone number, their rates of pay for the covered period, the regular hourly rate or rates of pay, the overtime rate or rates of pay, and the number of regular and overtime hours worked. *Id.* ¶ 153. Defendants also allegedly failed to provide Plaintiffs and

---

[2] The location is alternately described as an "asylum" and a "government shelter" in the complaint. *Id.* ¶¶ 4, 58, 74, 87, 100, 116, 129, 193. The difference is immaterial for purposes of this motion.

other employees wage notices at the time of their hiring and on or before February 1 of each subsequent year. *Id.* ¶ 154.

## PROCEDURAL HISTORY

This case was initiated by complaint filed on August 21, 2025.  Dkt. No. 1.  Plaintiffs allege claims under the Fair Labor Standards Act of 1938 ("FLSA"), the New York Labor Law ("NYLL"), and New York common law on behalf of themselves and a putative FLSA collective under 29 U.S.C. § 216(b) and a putative class under Federal Rule of Civil Procedure 23. Specifically, Plaintiffs allege that Defendants (1) failed to pay them overtime pay at a rate of one and a half times their regular rate of pay for each hour worked in excess of forty hours in a work week in violation of FLSA, 29 U.S.C. § 207(a)(1), *id.* ¶¶ 168–74; (2) failed to pay them overtime pay at a rate of one and a half times their regular rate of pay in violation of NYLL §§ 190 *et seq.*, *id.* ¶¶ 175–78; (3) failed to provide them accurate wage notices in violation of NYLL § 195(1), *id.* ¶¶ 179–82; (4) failed to provide them accurate wage statements in violation of NYLL § 195(3), *id.* ¶¶ 183–86; (5) breached the public works contracts entered into by Defendants by failing to pay Plaintiffs the prevailing rate of wages and supplemental benefits for all labor performed upon public works projects, *id.* ¶¶ 187–92; (6) were unjustly enriched by receiving the benefit of Plaintiffs' labor without paying the required prevailing wage, overtime pay, and supplemental benefits due to Plaintiffs, *id.* ¶¶ 192–99; and (7) are subject to a claim in quantum meruit for the value of Plaintiffs' services for which they did not pay prevailing wages, *id.* ¶¶ 200–02.

On October 17, 2025, the Corporate and Individual Defendants filed their motion to dismiss.  Dkt. No. 30.  The motion was supported by a memorandum of law and the affidavit of Indhira Ortega.  Dkt. Nos. 30-1, 32.  On October 29, 2025, Plaintiffs filed an affirmation in

opposition to the motion.  Dkt. No. 35.  On November 11, 2025, the Corporate and Individual

Defendants filed a reply memorandum of law in further support of the motion.  Dkt. No. 46.

On November 11, 2025, the Corporate and Individual

Garner filed its motion to dismiss on November 5, 2025.  Dkt. No. 40.  The motion is

supported by a memorandum of law and the declaration of Francis Giambalvo.  Dkt. Nos. 41–42.

Plaintiff filed an affirmation in opposition to the motion on November 26, 2025.  Dkt. No. 59.

On December 10, 2025, Garner filed a reply memorandum of law in further support of its

motion.  Dkt. No. 66.

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court

must accept as true all factual allegations in the complaint and draw all possible inferences from

those allegations in favor of the plaintiff.  *See Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir.

2004).  This requirement "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  A complaint must therefore offer more than "labels and conclusions," "a formulaic

recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual

enhancement" in order to survive dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557

(2007).  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the

plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery

will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx*

*Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).  At the motion to dismiss stage, the Court

considers only "the four corners of the complaint" and "look[s] only to the allegations contained

therein." *Perez v. Westchester Foreign Autos, Inc.*, 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28,

2013) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

## DISCUSSION

**I.    Garner's Motion to Dismiss the First Through Fourth Causes of Action**

Garner alleges that Plaintiffs' first through fourth causes of action must be dismissed

because Plaintiffs have failed to allege that Garner was their employer.  Dkt. No. 42 at 1, 9; Dkt.

No. 66 at 1–4.  Those causes of action assert claims under the FLSA and NYLL against Garner

and the other Defendants as Plaintiffs' employers.  Dkt. No. 1 ¶¶ 168–86.

The FLSA defines "employer" to "include[e] any person acting directly or indirectly in

the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The FLSA's

definition of "employer" includes "an individual, partnership, association, corporation, business

trust, legal representative, or any organized group of persons."  *Id.* § 203(a), (d).  "The Supreme

Court has emphasized the 'expansiveness' of the FLSA's definition of employer."  *Herman v.

RSR Sec. Serv. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Falk v. Brennan*, 414 U.S. 190,

195 (1973)).  "[E]mployment for FLSA purposes [is] a flexible concept . . . determined on a

case-by-case basis by review of the totality of the circumstances."  *Barfield v. N.Y.C. Health &

Hosps. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2007).

Plaintiffs allege generally that they are former employees of Garner and the Corporate

Defendants and that each of the Corporate Defendants "employ[ed]" Plaintiffs at the Cleaning

Project.  Compl. ¶¶ 1, 9, 17–23, 27–29.  With respect to Garner, Plaintiffs proceed on both "joint

employer" and "single employer" theories.  Plaintiffs allege that "Defendants jointly employed

Plaintiffs," *id.* ¶ 36, or, in the alternative, that "Defendants constitute a single employer of

Plaintiffs," *id.* ¶ 37.  Plaintiffs further allege that "[e]ach Defendant possessed substantial control

over Plaintiffs' (and other similarly situated employees') working conditions, and over the

5

policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein." *Id.* ¶ 35.  They also allege that "Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services." *Id.* ¶ 39.

In determining whether a particular defendant is an employer, the Court is not bound by the niceties of formal corporate relationships but rather looks at the "economic reality."  The "economic reality" test is comprised of two distinct inquiries: one into formal control and the other into functional control.  *See Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 205 (S.D.N.Y. 2014).  Formal control includes "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)); *see Leal v. Masonry Servs., Inc.*, 2013 WL 550668, at *3 (E.D.N.Y. Feb. 12, 2013); *Chen v. TYT E. Corp.*, 2012 WL 5871617, at *4 (S.D.N.Y. Mar. 21, 2012); *Cannon v. Douglas Ellman LLC*, 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007).

Even if defendants lack formal control, an employer-employee relationship may exist where the defendant exercises functional control over an employee.  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003); *accord Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 939 (S.D.N.Y. 2013); *Olvera*, 73 F. Supp. 3d at 205.  Depending on the context, different factors may be relevant to evaluating functional control.  *See Barfield*, 537 F.3d at 141–42.  For example, in determining whether a party is an independent contractor or an employee,

the Second Circuit has evaluated five factors, all driving at the question of whether "the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988); *see Hsieh Liang Yeh v. Han Dynasty, Inc.*, 2019 WL 633355, at *6 (S.D.N.Y. Feb. 14, 2019).  Alternatively, in *Zheng*, the Second Circuit applied six factors to determine whether a contractor was the employer of a subcontractor's employee, all of which were addressed to whether the contractor had "functional control over workers even in the absence of the formal control measured by the *Carter* factors." *Zheng*, 355 F.3d at 71–72; *see Hsieh Liang Yeh*, 2019 WL 633355, at *6.

Where "a plaintiff alleges that more than one entity was responsible for his or her employment, courts generally assess whether the entities can be held liable as 'joint employers,' . . . [or] whether the entities can be held liable as 'single enterprise.'" *Herrera v. Albion Venue, LLC*, 2023 WL 6308052, at *3 (E.D.N.Y. Sept. 28, 2023) (citations and internal quotation marks omitted).  "[A] group of distinct but closely affiliated entities should be treated as a single employer" when they operate as a "single integrated enterprise." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014).  The single-integrated-enterprise test examines "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995); *see Radio & Television Broad. Technicians Loc. Union 1264 v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965); *Shukla v. Viacom Inc.*, 2019 WL 1932568, at *8 (S.D.N.Y. May 1, 2019). "Although no one factor controls the analysis, the second, 'centralized control of labor relations,' is the most significant." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 156 (2d Cir. 2014) (quoting *Cook*, 69 F.3d at 1240).  The fact of corporate ownership is not enough to establish a single integrated enterprise: there is "a strong

presumption that a parent is not the employer of its subsidiary's employees." *Balut v. Loral Elec. Sys.*, 988 F. Supp. 339, 344 (S.D.N.Y. 1997), *aff'd*, 166 F.3d 1199 (2d Cir. 1998).

Two entities also can both be determined to be an employer under the "joint employer" test. *Shukla*, 2019 WL 1932568, at *8. Under the theory of joint employment, "an entity other than an employee's formal employer can be held liable not because it is part of a 'single integrated enterprise,' but rather because the two entities 'handle certain aspects of their employer-employee relationship jointly.'" *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (summary order) (quoting *Arculeo v. On–Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)). "[F]actors courts have used to examine whether an entity constitutes a joint employer of an individual include 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision.'" *Shiflett*, 601 F. App'x at 30 (quoting *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013)). When evaluating whether two entities may be considered joint employers, the most important consideration is whether the alleged joint employer had significant control over the employees of the other joint employer. *See Clinton's Ditch Co-op Co. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir. 1985) ("[I]t is rather a matter of determining which of two, or whether both, [employers] control, in the capacity of employer, the labor relations of a given group of workers."); *Serv. Emps. Int'l Union, Loc. 32BJ v. N.L.R.B.*, 647 F.3d 435, 442 (2d Cir. 2011) ("'[A]n essential element' of any joint employer determination is 'sufficient evidence of immediate control over the employees.'" (quoting *Clinton's Ditch*, 778 F.2d at 138)).

"The joint employer test differs from the single integrated enterprise test in subtle but significant ways." *Robbins v. Candy Digit. Inc.*, 2024 WL 5056429, at *19–21 (S.D.N.Y. Dec. 9, 2024). In a single integrated enterprise, "all the employees of the constituent entities are

employees of the overarching integrated entity." *Arculeo*, 425 F.3d at 199.  The joint employment test assumes that the two entities are separate and distinct, but concludes that each is liable for the decision ostensibly made by the other because the two "have merely chosen to handle certain aspects of their employer-employee relationships jointly." *Clinton's Ditch*, 778 F.2d at 137.  Courts have applied the joint employment doctrine to "temporary employment or staffing agencies and their client entities" and to "contractors and subcontractors and other scenarios where two separate entities have control over an employee's employment." *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009), *aff'd sub nom. Lima v. Adecco &/or Platform Learning, Inc.*, 375 F. App'x 54 (2d Cir. 2010) (summary order).  Additionally, whereas in a single integrated enterprise all employees are considered employees of the enterprise, a joint employer relationship with respect to one employee does not necessarily mean that another employee has the same joint employer relationship.  *Arculeo*, 425 F.3d at 199.

Plaintiffs have failed to allege facts supporting that Garner is an employer under either a "joint employer" or "single employer" theory.  Certain of Plaintiffs' allegations use impermissible group pleading.  Plaintiffs allege that "Defendants controlled a publicly funded cleaning project of the asylum," Compl. ¶ 4, that "Defendants operate four government facilities cleaning companies that work on the public works project in the Mott Haven section of the Bronx County in New York," *id.* ¶ 32, that "Defendants failed to pay Plaintiffs the 'prevailing wages' they were entitled to receive for work performed on the public works projects pursuant to New York contracts entered into between the Defendants and public entities," *id.* ¶ 6, and that "Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the prevailing wage rate and overtime compensation required by federal and state law and regulations," *id.* ¶ 12.

9

Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'It is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes,' and that 'Rule 8(a) is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it.'" *Nesbeth v. N.Y.C. Mgmt. LLC*, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) (quoting *Canon U.S.A., Inc. v. F&E Trading LLC*, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017)); *accord Ortiz v. Consol. Eidson Co. of N.Y., Inc.*, 2025 WL 2717309, at *18 (S.D.N.Y. Sept. 24, 2025). A complaint engages in impermissible group pleading when it "simply lumps or groups defendants together without describing which defendant is responsible for what conduct or when each defendant participated in that unspecified conduct." *Agudelo v. Recovo Mortg. Mgmt. LLC*, 2025 WL 1674486, at *9 (E.D.N.Y. June 13, 2025) (quoting *Lepore v. NL Brand Holding LLC*, 2017 WL 4712633, at *6 (S.D.N.Y. Sept. 28, 2017)). Plaintiffs' allegations treat all defendants in an undifferentiated manner and thus do not suffice to state a claim against Garner. *See Romualdo v. Guru Krupa 104 Corp.*, 2023 WL 6167614, at *8 (E.D.N.Y. Sept. 1, 2023); *Stewart v. Hudson Hall LLC*, 2020 WL 8732875, at *8 (S.D.N.Y. Oct. 18, 2024). It is impossible to tell from the complaint whether Garner is being sued as a primary violator, a joint employer, or part of a single integrated enterprise.

Plaintiffs do make allegations that are not group pleading. Plaintiffs allege that "[e]ach Defendant possessed substantial control over Plaintiffs' . . . working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs." Compl. ¶ 35. By using the locution "each," Plaintiffs make clear that their allegation applies not just to the defendants as a group, but to each company in that group individually. Each Defendant is

able to answer the allegation individually with respect to its own conduct. The allegation does not constitute group pleading. *See Fallon v. 18 Greenwich Ave., LLC*, 2021 WL 1105066, at *4 (S.D.N.Y. Mar. 23, 2021); *Agudelo*, 2025 WL 1674486, at *9.

These allegations fail not because they impermissibly group all defendants together but because with respect to Garner, they are conclusory. Plaintiffs' allegations simply parrot the economic reality test, without providing facts that support Plaintiffs' conclusions. *See Fallon*, 2021 WL 1105066, at *4; *Keawsri v. Ramen-Ya Inc.*, 2018 WL 279756, at *3 (S.D.N.Y. Jan. 2, 2018) ("[B]oilerplate allegations that simply recite the elements of the economic reality test are insufficient to state a claim."). In short, Plaintiffs' complaint "is the paradigmatic 'formulaic recitation of the elements of a cause of action' [which] is insufficient to establish a claim for relief under *Twombly* and *Iqbal*." *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 588 (S.D.N.Y. 2020) (quoting *Iqbal*, 556 U.S. at 678).

The Court thus dismisses the first through fourth causes of action against Garner without prejudice.

## II.     Defendants' Motions to Dismiss the Third and Fourth Causes of Action

All Defendants move to dismiss Plaintiffs' third and fourth causes of action, which assert violations of New York's Wage Theft Prevention Act ("WTPA"), codified in NYLL § 195. Plaintiffs' third cause of action alleges that Defendants failed to provide Plaintiffs written notice of their rate of pay in English and Spanish in violation of NYLL § 195(1). Compl. ¶¶ 179–82. Plaintiffs' fourth cause of action alleges that Defendants failed to provide Plaintiffs a wage statement with each payment of wages listing the dates of work covered by that payment, the rates of pay for the covered period, the number of regular and overtime hours worked, and the regular hourly rate and overtime rate of pay in violation of NYLL § 195(3). *Id.* ¶¶ 183–86.

Defendants argue that the complaint fails to allege standing.  Dkt. No. 30-1 at 3; Dkt. No. 42 at 9–11.

In *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024), the Second Circuit held that, in order to allege standing under the WTPA, the plaintiff must "show some causal connection between the lack of accurate notices and [a] downstream harm," such as an impaired ability to seek relief for wage violations about which they may not have information or a lack of proper documentation to apply for public benefits.  *Id.* at 308–09.  The fact that the WTPA "grants a person a statutory right and purports to authorize that person to sue to vindicate that right" alone does not give an employee the right to pursue that claim in federal court.  *Id.* at 308. Thus, it is not sufficient that a plaintiff point to "technical violations of the [NYLL]."  *Id.* at 305. Rather, the plaintiff must plausibly allege "*how* he was injured by [the] defendants' failure to provide the required documents" and may not rely on "speculation and conjecture."  *Id.* at 309 (citation omitted); *see also id.* at 308 ("[U]nless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195.").

In *Guthrie*, the Circuit cited with approval decisions by judges in this District in *Kaur v. Natasha Accessories Ltd.*, 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024), *Santamaria v. Vee Techs., Inc.*, 2024 WL 1216579, at *8 (S.D.N.Y. Mar. 21, 2024), and *Metcalf v. TransPerfect Translations Int'l, Inc.*, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023).  *See* 113 F.4th at 308 n.4.  In each of those cases, the plaintiff claimed that the failure to provide an accurate wage statement or notice prevented her from determining the wages she was owed and from seeking

payment for the unpaid or owed wages.  *See Kaur*, 2024 WL 3429129, at *4 ("Kaur plausibly alleges that her wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for the precise amount of her unpaid wages and she was thus harmed by being deprived of her income for longer than she would have been had she been able to timely raise her underpayment earlier.  This financial harm is a tangible downstream consequence of the failure to receive required information." (internal quotation marks, alterations, and citation omitted)); *Santamaria*, 2024 WL 1216579, at *8 ("Santamaria claims that she suffered an injury because she was misclassified and therefore underpaid.  So, according to Santamaria, the informational harm—the fact that she wasn't advised that she was due overtime if she worked overtime hours—led to a concrete injury here.  That is, Santamaria didn't know she was supposed to be paid overtime, and so she lost out on the ability to advocate for it and be paid according to the law's requirements."); *Metcalf*, 2023 WL 2674743, at *6 ("Plaintiffs here actually received inaccurate wage notices, which did not include a tabulation of hours and overtime, and which thereby prevented them from knowing whether, and to what extent, they had been underpaid during the nine-month period.  Without a record of hours worked, plaintiffs have further remained unable to determine whether the remedial payments issued by TransPerfect have adequately compensated them for their overtime hours.  Accordingly, the injury suffered by plaintiffs is not merely hypothetical.").

Following *Guthrie*, courts in this Circuit "are in agreement that a plaintiff has standing if he [or she] plausibly alleges that, by failing to provide the required wage statements, the employer was 'able to hide [its] violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of [his] unpaid wages.'"  *Cortez v. Brand Name 99 Cents & Up Corp.*, 2025 WL 1251297, at *6 (S.D.N.Y. Apr. 30, 2025)

(quoting *Roma v. David Carmili, Physician, P.C.*, 2024 WL 5152211, at *5–6 (E.D.N.Y. Dec. 18, 2024)); *see also Yuwona v. Jade Eatery & Lounge LLC*, 2025 WL 2793725, at *8 (S.D.N.Y. Sept. 30, 2025) (holding that plaintiffs' allegation that defendants' failure to provide accurate wage statements hindered plaintiffs' ability to discover defendants' wrongdoing and advocate for themselves was sufficient to establish standing); *Ortiz*, 2025 WL 2717309, at *47 (same); *Lambert v. New Start Cap. LLC*, 2025 WL 2295254, at *12 (S.D.N.Y. Aug. 7, 2025) (same); *Velasquez v. Universal Protection Serv., LLC*, 2025 WL 2105894, at *4–5 (S.D.N.Y. July 28, 2025) (same).

Plaintiffs' allegations satisfy the *Guthrie* standard. Each Plaintiff alleges that as a result of Defendants' failure to provide wage notices and accurate wage statements, "he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him." Compl. ¶¶ 56, 72, 85, 98, 114, 127, 144; *see also id.* ¶ 155. Plaintiffs further allege that each Plaintiff worked more than forty hours in a work week, *id.* ¶¶ 49, 63, 78, 90, 104, 120, 132–37, that Defendants failed to pay Plaintiffs the appropriate prevailing wages and overtime compensation for hours worked in excess of forty in a work week, *id.* ¶ 145, and that Defendants disguised the actual number of hours Plaintiffs worked to avoid paying them properly for their full hours worked, *id.* ¶ 150. Putting those allegations together, it is plausible that, as a result of Defendants' failure to provide accurate wage notices and wage statements, Plaintiffs were unable to discover the existence and magnitude of Defendants' violations of the NYLL and thus unable to obtain proper payment for all of their hours worked. It may be that "such a causal connection can be alleged in many cases to satisfy the *Guthrie* injury-in-fact standard." *Ortiz*, 2025 WL 2717309, at *48. But that may be "a function of the fact that such injuries are the natural and

common consequence of violations of the wage notice and statement requirements when employees are underpaid," *id.*, and, in any event, Defendants will have an opportunity to challenge Plaintiffs' allegations during discovery.[3]

The Court denies the Corporate and Individual Defendants' motion to dismiss the third and fourth causes of action.

## III.    Defendants' Motion to Dismiss the Fifth Cause of Action

Plaintiffs' fifth claim alleges that Defendants entered into public works contracts that required the payment of prevailing rates of wages and supplemental benefits to Plaintiffs for their benefit and breached those contracts by failing to pay the prevailing rate of wages and supplemental benefits. Compl. ¶¶ 187–91. All Defendants argue that the fifth claim for relief must be dismissed for failure to identify a contract or a specific clause or provision within that contract that Defendants breached. Dkt. No. 30-1 at 3–6; Dkt. No. 42 at 11–12.[4]

---

[3] Garner relies upon *Munoz v. Group US Management LLC*, 2023 WL 5390204 (S.D.N.Y. Aug. 22, 2023), *Quieju v. La Jugueiria Inc.*, 2023 WL 3073518 (E.D.N.Y. Apr. 25, 2023), and *Cucul v. Major Cleaning, Inc.*, 2024 WL 2783505 (E.D.N.Y. May 30, 2024). Dkt. No. 42 at 10–11. But all three cases precede the Second Circuit's decision in *Guthrie* and, in any event, are distinguishable on their facts because they did not allege downstream consequences flowing from the alleged informational injury. In *Cucul* and *Munoz*, for example, the plaintiffs did not allege that they were unaware that they were being underpaid, *Cucul*, 2024 WL 2783505, at *5, alleging at most that they were deprived of the evidence regarding their underpayment, *Munoz*, 2023 WL 5390204, at *6; *see also La Jugueiria*, 2023 WL 3073518, at *2 (plaintiff did not allege "how he was injured by defendants' failure to provide the required documents"). In this case, by contrast, Plaintiffs allege more than just that they lacked the pay records to demonstrate that they were underpaid. They allege that they were unaware that they were being underpaid at all.

[4] The Corporate Defendants also argue that the only contract between Garner and any of the Corporate Defendants, an agreement between Garner and Lola's Brunch LLC dba Bermudez Ortega Contractors, does not contain any provision requiring the payment of prevailing wages. Dkt. No. 30-1 at 4. Plaintiffs do not dispute that such contract does not require the payment of prevailing wages. Dkt. No. 35. Rather, Plaintiffs argue that they have not had discovery and that there may be "non-written contracts." *Id.* ¶ 7.

Section 220 of the NYLL requires all "laborers, workmen or mechanics" employed on "public works" projects to be paid the "prevailing rate of wages." NYLL § 220(3)(a); *see Ortiz*, 2025 WL 2717309, at *36. The law "implements the constitutional mandate that contractors engaged in public projects pay their workers wages and supplements which 'shall be not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work . . . is performed.'" *Lantry v. State*, 844 N.E.2d 276, 279 (N.Y. 2005) (quoting NYLL § 220(3)); *see also* N.Y. Const., art. I, § 17.

A plaintiff can bring a private right of action for underpayment of wages under NYLL § 220 only after there has been an administrative determination pursuant to subsections (7) and (8) that either has gone unreviewed or been affirmed in the claimants-employees' favor. *See Pesantez v. Boyle Env't Servs., Inc.*, 673 N.Y.S.2d 659, 661 (1st Dept. 1998).[5] Otherwise, a plaintiff must file a common law third-party beneficiary breach of contract claim. *Id.* In sum, "[w]here workers on a public works project claim they have not been paid prevailing wages pursuant to Labor Law § 220, they have two options: (1) enforce their employer's statutory obligations to pay prevailing wages by complying with the statutory mechanism under Labor Law § 220(7), including filing a complaint with the New York State Department of Labor and awaiting a determination before filing a lawsuit under section 220; or (2) file a third-party

---

[5] Judge Engelmayer has explained:

> Section 220 provides an administrative remedy for violations of this prevailing-wage requirement: In broad strokes, workers are to file a complaint with a "fiscal officer," who then conducts an investigation and holds a hearing; if the worker prevails before the fiscal officer and this determination is either affirmed on review by a New York appellate division or is not so reviewed, the worker may then institute an action for recovery of the difference between the amount paid and the amount that should have been paid. *See* NYLL § 220(8).

*Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 613 (S.D.N.Y. 2016).

beneficiary breach of contract claim against their employer." *Dominguez v. WRS Environmental Services Inc.*, 2019 WL 2371886, at *3 (Sup. Ct. N.Y. Cnty. June 03, 2019).

"[I]t is well-settled under New York law that where a public or private sector contract calls for the payment of prevailing wages, and prevailing wages were not paid, workers may sue for breach of contract under a third-party beneficiary theory." *Ortiz*, 2025 WL 2717309, at *36; *see also Cox v. NAP Const. Co.*, 891 N.E.2d 271, 275 (N.Y. 2008) ("under long-settled rules plaintiffs would be third-party beneficiaries" of promises made by contractors to a New York City agency to pay plaintiffs certain wages); *Santana v. San Mateo Const. Corp.*, 225 N.Y.S.3d 246, 247 (1st Dep't 2025) ("[W]orkers entitled to prevailing wages under [N.Y.C. Admin. Code § 19-142] may enforce any agreements entered into pursuant thereto as third-party beneficiaries thereof."); *Lewis v. Hallen Constr. Co.*, 141 N.Y.S.3d 857, 858 (1st Dep't 2021) (affirming lower court decision allowing plaintiffs to proceed on breach of contract theory, "[w]hether or not the construction projects at issue were public works projects," where prevailing wage requirements "were applicable pursuant to both [N.Y.C. Admin. Code § 19-142] and a contractual provision").

"[T]ypically, '[a] breach of contract claim will be dismissed where a plaintiff fails to allege 'the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.'" *123RF LLC v. HSBC Bank USA, N.A.*, 663 F. Supp. 3d 391, 402 n.11 (S.D.N.Y. 2023) (quoting *Martinez v. Vakko Holding A.S.*, 2008 WL 2876529, at *2 (S.D.N.Y. Jul. 23, 2008)); *see Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 673 (S.D.N.Y. 2023); *cf. Maldonado v. Olympia Mech. Piping & Heating Corp.,* 777 N.Y.S.2d 730, 731 (2d Dep't 2004) (holding that contract provisions must be pled). Plaintiffs assert that they need not plead a specific contract or

contractual provision because the obligation to pay prevailing wages arises as a matter of statute independent of any contractual obligation. Dkt. No. 59 ¶ 18. However, the NYLL "provides a statutory method for enforcing the statutory obligation to pay wages at not less than the prevailing rate." *Fata v. S. A. Healy Co.*, 46 N.E.2d 339, 340 (N.Y. 1943). "[A] breach of contract claim depends on the actual insertion of Section 220's prevailing wage language into the contract." *Seidel v. Hoffman Floor Covering Corp.*, 2012 WL 3064153, at *3 (E.D.N.Y. July 26, 2012). Plaintiffs have chosen not to avail themselves of the statutory remedy but rather to pursue their alleged common law rights. In order to do so, they must allege the existence of a contract that gives them such common law rights. In the absence of such a pleading, Defendants have no notice as to which of them is alleged to be a party to a contract for a prevailing wage and whether that contract identifies plaintiffs as third-party beneficiaries.[6]

The Court thus grants Defendants' motion to dismiss the fifth cause of action and dismisses that claim without prejudice.

## IV.    Defendants' Motion to Dismiss the Sixth and Seventh Causes of Action

In their sixth cause of action, Plaintiffs allege that Defendants were unjustly enriched by receiving the benefit of Plaintiffs' labor without paying them the required prevailing wage, overtime, and supplemental benefits Plaintiffs were due. Compl. ¶¶ 192–99. In their seventh cause of action, Plaintiffs assert that Defendants are liable to Plaintiffs under quantum meruit for the benefit of the services they received from Plaintiffs without paying Plaintiffs the reasonable value of those services. Id. ¶¶ 200–02. Garner argues that Plaintiffs' claims in equity for unjust enrichment and quantum meruit cannot substitute for improperly pled claims for violations of

---

[6] Plaintiffs also fail to allege either that they are "laborers, workmen, or mechanics" within the meaning of Section 220 or that they performed "covered work." *See Ramos v. SimplexGrinnell LP*, 740 F.3d 852, 856 (2d Cir. 2014).

FLSA and the NYLL and breach of contract.  Dkt. No. 42 at 13–14.  The Corporate and

Individual Defendants further argue that those claims are duplicative of Plaintiffs' FLSA and

NYLL claims and are preempted by FLSA and the NYLL.  Dkt. No. 30-1 at 7–8.

Plaintiffs do not respond to Defendants' arguments and thus the sixth and seventh claims

are deemed abandoned.  *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014).[7]

## CONCLUSION

The motions to dismiss are GRANTED IN PART and DENIED IN PART.  Garner's

motion to dismiss the first through fourth causes of action is GRANTED, and those claims are

dismissed without prejudice.[8]  The motion of the Corporate and Individual Defendants to dismiss

the third and fourth causes of action is DENIED.  The motion of all Defendants to dismiss the

fifth cause of action is GRANTED, and that claim is dismissed without prejudice.  The motion to

dismiss the sixth and seventh causes of action is GRANTED, and those claims are dismissed

with prejudice.  Plaintiffs have leave to file a motion to file an amended complaint consistent

with this Opinion and Order no later than December 29, 2025.

---

[7] In any event, the claims appear to be without merit.  To the extent that Plaintiffs' common law claims are grounded in the failure to provide overtime pay in violation of FLSA, those claims are preempted by FLSA.  *See Quintanilla v. Suffolk Paving Corp.*, 2019 WL 885933, at *35 (E.D.N.Y. Feb. 22, 2019); *Contrera v. Langer*, 314 F. Supp. 3d 562, 571 (S.D.N.Y. 2018); *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 361–62 (E.D.N.Y. 2015); *Acevedo v. WorkFit Med. LLC*, 2014 WL 4659366, at *13 (W.D.N.Y. Sept. 17, 2014); *Sosnowy v. A. Perri Farms, Inc.,* 764 F. Supp. 2d 457, 470 (E.D.N.Y. 2011).  To the extent that they are based on the failure to pay a prevailing wage, they are duplicative.  Plaintiffs may not circumvent the careful procedures for bringing a prevailing wage claim by asserting it in quasi-contract.

[8] Plaintiffs attach to their opposition to Garner's motion to dismiss screenshots of emails and a timesheet supporting Garner's status as employer.  *See* Dkt. Nos. 59-2, 59-3.  Those exhibits are not cognizable on a motion to dismiss.  *See Gray v. Wesco Aircraft Holdings, Inc*, 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order).  The Court expresses no view whether allegations that include reference to such documents would suffice to state a claim under FLSA.

The Clerk of Court is respectfully directed to close Dkt. Nos. 30 and 40.

SO ORDERED.

Dated: December 16, 2025
      New York, New York

                              LEWIS J. LIMAN
                          United States District Judge