Michael Faillace [MF-8436]
MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
MARIO MERA ROMERO, WILFRIDO
MARTINEZ, WILLIAM STEVEN OLIVERO
FORERO, JOFFRE LAYA YAMARTE,
CRISTIAN OLIVERO SANCHEZ, SERGIO
CARVAJAL, AND WUILLEY YEEN
ZABALA NIETO, *individually and on behalf
of others similarly situated,*

                                    *Plaintiffs*,

              -against-

GARNER ENVIRONMENTAL SERVICES,
INC.  (D/B/A GARNER ENVIRONMENTAL
SERVICES), BERMUDEZ ORTEGA LLC.
(d/b/a BERMUDEZ ORTEGA
CONTRACTORS), LOLA'S BRUNCH, LLC.
(d/b/a LOLA'S B ENVIRONMENT
SOLUTIONS), LB ENVIRONMENT
CLEANING SOLUTIONS INC (d/b/a LB
ENVIRONMENT CLEANING SOLUTIONS
INC), INDIRA ORTEGA, AND EDWIN
BERMUDEZ,

                               *Defendants.*
-----------------------------------------------------------X

                  **25-CV-6912**

        **AMENDED COMPLAINT**

  **COLLECTIVE ACTION UNDER**
  **29 U.S.C. § 216(b) AND RULE 23**
        **CLASS ACTION**

            **ECF Case**

         Mario Mera Romero, Wilfrido Martinez, William Steven Duque Forero, Joffre Laya

Yamarte, Cristian Olivero Sanchez, Sergio Carvajal, and Wuilley Yeen Zabala Nieto,

individually and on behalf of others similarly situated (collectively, "Plaintiffs), by and through

their attorneys, Michael Faillace & Associates, P.C. upon their knowledge and belief, and as against Garner Environmental Services, Inc.  (d/b/a Garner Environmental Services), Bermudez Ortega LLC. (d/b/a Bermudez Ortega Contractors), Lola's Brunch, LLC. (d/b/a Lola's B Environment Solutions), LB Environment Cleaning Solutions Inc (d/b/a LB Environment Cleaning Solutions Inc), ("Defendant Corporations"), Indira Ortega and Edwin Bermudez ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs, on behalf of themselves and all other persons similarly situated, current and former employees of defendants Bermudez Ortega LLC. (d/b/a Bermudez Ortega Contractors), Lola's Brunch, LLC. (d/b/a Lola's B Environment Solutions), LB Environment Cleaning Solutions Inc (d/b/a LB Environment Cleaning Solutions Inc), , Edwin Bermudez and Indhira Ortega (collectively, the "Subcontractor Defendants"), who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), allege that they are entitled to recover from Subcontractor Defendants: (i) compensation for wages paid at less than the statutory minimum wage; (ii) compensation for unpaid wages for overtime work for which Plaintiffs did not receive overtime premium pay as required by law; and (iii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because the Subcontractor Defendants' violations were willful lacked a good faith basis.

2.      Plaintiffs further complain that they are entitled to recover from Subcontractor Defendants under the New York Labor Law ("NYLL"): (i) back wages for unpaid minimum wage, and overtime premium for overtime work, each of which Defendants willfully failed to pay as required by the NYLL §§ 650 et seq. and the supporting New York State Department of Labor regulations; (ii) unpaid spread-of-hours compensation for shifts worked lasting in excess of 10

hours from start to finish in violation of the NYLL; (iii) liquidated damages pursuant to NYLL § 198(1-a) for these violations; and (iv) statutory damages for the defendants' violation of the Wage Theft Prevention Act, together with attorneys' fees and costs.

3.     Plaintiffs further allege that they are entitled to recover from defendant Garner Environmental Services, Inc. d/b/a Garner Environmental Services (the "Prime Contractor"), together with Subcontractor Defendants, for: (i) unpaid wages resulting from the failure to pay applicable New York City prevailing wage rates and corresponding prevailing wage overtime rates as required by NYLL §§ 220 and 230, and by NYLL § 220-b(2)(a)(1); and (ii) liquidated damages pursuant to NYLL § 198(1-a), together with attorneys' fees and costs.

## PARTIES

### *Plaintiffs*

4.     Plaintiff Mario Mera Romero ("Plaintiff Mera" or "Mr. Mera") is an adult individual residing in Suffolk County, New York.  Plaintiff Mera was employed by Defendants from approximately March 3, 2025 until on or about July 11, 2025.

5.     Plaintiff Wilfrido Martinez ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in New York County, New York.  Plaintiff Martinez was employed by Defendants from approximately February 10, 2025 until on or about July 24, 2025.

6.     Plaintiff William Steven Duque Forero ("Plaintiff Duque" or "Mr. Duque") is an adult individual residing in Hudson County New Jersey. Plaintiff Duque was employed by Defendants from approximately June 16, 2025 until on or about July 27, 2025.

7.     Plaintiff Joffre Laya Yamarte ("Plaintiff Laya" or "Mr. Laya") is an adult individual residing in Bronx County, New York. Plaintiff Laya was employed by Defendants from approximately February 22, 2025 until on or about June 22, 2025.

8.    Plaintiff Cristian Olivero Sanchez ("Plaintiff Olivero" or "Mr. Olivero") is an adult individual residing in Bronx County New York. Plaintiff Olivero was employed by Defendants from approximately January 2025 until on or about July 1, 2025.

9.    Plaintiff Sergio Carvajal ("Plaintiff Carvajal" or "Mr. Carvajal") is an adult individual residing in Bronx County, New York. Plaintiff Carvajal was employed by Defendants from approximately May 11, 2025 until on or about June 22, 2025.

10.    Plaintiff Wuilley Yeen Zabala Nieto ("Plaintiff Zabala" or "Mr. Zabala") is an adult individual residing in Queens County, New York. Plaintiff Zabala was employed by Defendants at Garner Environmental services, Inc. from approximately March 4, 2025 until on or about April 16, 2025.

*Defendants*

## PRIME CONTRACTOR DEFENDANT

11.    Garner Environmental Services, Inc. d/b/a Garner Environmental Services (hereinafter referred to as "Garner Environmental Services" or the "Prime Contractor") is a foreign business corporation organized under the laws of the State of New York, with a registered principal executive office located at 825 East 141st Street, Suite 202, Bronx, New York 10454.

12.    At all relevant times, defendant Garner Environmental Services, either directly and/or through entities affiliated with or controlled by it, entered into contracts with public entities, including but not limited to, the New York City Department of Emergency Management, for the performance of public works projects, primarily within New York City (the "Public Works Projects").

13.    At all relevant times, Garner Environmental Services, acting as the Prime Contractor on such Public Works Projects, retained subcontractors, including Bermudez Ortega LLC. (d/b/a

Bermudez Ortega Contractors), Lola's Brunch, LLC. (d/b/a Lola's B Environment Solutions), LB Environment Cleaning Solutions Inc (d/b/a LB Environment Cleaning Solutions Inc), , to perform certain such Public Works Projects.

14.    At all relevant times, Garner Environmental Services as the Prime Contractor remained jointly and severally liable under New York Labor Law § 220-b(2)(a)(1) for ensuring that all subcontractors on its Public Works Projects paid applicable New York City prevailing wage rates and corresponding prevailing wage overtime rates to workers employed thereon.

## SUBCONTRACTOR DEFENDANTS

15.    Defendant Bermudez Ortega LLC. (d/b/a Bermudez Ortega Contractors), Lola's Brunch, LLC. (d/b/a Lola's B Environment Solutions), LB Environment Cleaning Solutions Inc (d/b/a LB Environment Cleaning Solutions Inc),  (hereinafter referred to as "Lola's Cleaning Service") is a domestic business corporation organized under the law of the State of New York with a registered principal executive office address at 150 W. 225th Street, #6A, Bronx, New York 10463.

16.    At all relevant times, Defendant Lola's Cleaning Service has been and still continues to be employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

17.    Upon information and belief, at all relevant times, defendant Lola's Cleaning Service has had gross revenues in excess of $500,000.00.

18.    Upon information and belief, at all relevant times herein, defendant Lola's Cleaning Service has used goods and materials produced in interstate commerce and have employed at least two individuals who handled such goods and materials.

19.    Upon information and belief, at all relevant times herein, Individual Defendants

Indhira Ortega and Edwin Bermudez were/are the owners, principals and/or managers of Lola's Cleaning Service, who have the power to hire and fire employees, set wages and schedules, and maintain their records, including those of the plaintiffs.

20.    At all relevant times, Individual Defendants Indira Ortega and Edwin Bermudez were involved in the day-to-day operations of Lola's Cleaning Service and played an active role in managing the business.

21.    At all relevant times, Defendants Lola's Cleaning Service, Indira Ortega and Edwin Bermudez (the "Subcontractor Defendants") have owned and operated a cleaning services business that regularly provided janitorial and maintenance labor at worksites throughout New York City, including the Bronx.

22.    At all relevant times, Garner Environmental Services, acting as the Prime Contractor on such Public Works Projects, retained Lola's Cleaning Service as the subcontractor to perform cleaning services at a migrant shelter located at 825 East 141st Street, Bronx, New York.

23.     At all relevant times, Defendants Lola's Cleaning Service, Indira Ortega and Edwin Bermudez (the "Subcontractor Defendants") employed Plaintiffs to perform Public Work Projects, including cleaning services at a migrant shelter located at 825 East 141st Street, Bronx, New York.

24.    At all relevant times, each of Defendants Lola's Cleaning Service, Indira Ortega and Edwin Bermudez constituted an "employer" of Plaintiffs as that term is used in the Fair Labor Standards Act and New York Labor Law.

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

26.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

27.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to the claims occurred in this judicial district, including the place of Plaintiffs' employment and the wage-and-hour violations alleged herein.

## COLLECTIVE ACTION ALLEGATIONS

### (Against Subcontractor Defendants)

28.     Pursuant to 29 U.S.C. § 206 and § 207, Plaintiffs seek to prosecute their FLSA claims against Subcontractor Defendants as a collective action on behalf of a collective group of persons defined as follows:

> All persons who are or were formerly employed by Subcontractor Defendants in the United States at any time since September 5, 2022, to the entry of judgment in this case (the "Collective Action Period"), who were employed to perform cleaning services, and who were not paid statutory minimum wages and/or overtime compensation at rates at least one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

29.     The Collective Action Members are similarly situated to Plaintiffs in that they were employed by Subcontractor Defendants as non-exempt employees and were denied payment at the statutory minimum wage and/or were denied premium overtime pay for hours worked beyond forty hours in a work week.

30.     They are further similarly situated in that Subcontractor Defendants had a policy and practice of knowingly and willfully refusing to pay them the minimum wage, spread-of-hours

and/or overtime compensation.

31.     Plaintiffs and the Collective Action Members perform or performed the same or similar primary duties and were subjected to the same policies and practices by Subcontractor Defendants.

32.     The exact number of such individuals is presently unknown but is known by Subcontractor Defendants and can be ascertained through appropriate discovery.

## CLASS ALLEGATIONS – NEW YORK LABOR LAW

## (Against Subcontractor Defendants)

33.     Pursuant to the NYLL, Plaintiffs bring their Second, Third, Fourth, and Sixth Causes of Action against Subcontractor Defendants under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of persons consisting of all cleaning employees who are or were employed by the Subcontractor Defendants at any time since September 25, 2019 through the entry of final judgment in this case (the "NYLL Class Period"). This class is hereinafter referred to as the NYLL Class.

34.     The persons in the NYLL Class identified above are so numerous that joinder of all members is impracticable.

35.     Although the precise number of such persons is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of the Subcontractor Defendants.

36.     Upon information and belief, there are well in excess of forty (40) members of the NYLL Class.

37.     There are questions of law and fact common to the claims of Plaintiffs and the claims of the NYLL Class, including whether Subcontractor Defendants had a corporate policy of

failing to pay overtime premiums when employees worked in excess of forty (40) hours in a given week.

38.     The claims of Plaintiffs are typical of the claims of the NYLL Class, and Plaintiffs will fairly and adequately represent the NYLL Class. There are no conflicts between Plaintiffs and the members of the NYLL Class and Plaintiffs' counsel are experienced in handling class litigation.

39.     The Second, Third, Fourth, and Sixth Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2). Subcontractor Defendants have acted or refused to act on grounds generally applicable to the NYLL Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the NYLL Class as a whole.

40.     The Second, Third, Fourth, and Sixth Causes of Action are also properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the NYLL Class that predominate over any questions solely affecting individual members of the NYLL Class, including but not limited to:

   a.  whether each of the Subcontractor Defendants was an employer of the members of the NYLL Class within the meaning of the NYLL; and

   b.  whether each of the Subcontractor Defendants had a policy of failing to pay overtime for all hours worked in excess of forty (40) per week.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of this case where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to

concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## CLASS ALLEGATIONS – PREVAILING WAGE

### (Against Prime Contractor Defendant and Subcontractor Defendants)

42.    Pursuant to NYLL § 220 and the New York common law of contract, unjust enrichment, and quantum meruit, Plaintiffs bring their Fifth Cause of Action against Prime Contractor Defendant and Subcontractor Defendants under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of persons consisting of all cleaning employees who are or were formerly employed by the Subcontractor Defendants as subcontractors of Prime Contractor Defendant at any time since September 19, 2019 and through the entry of final judgment in this case (the "Prevailing Wage Class Period"). This class is hereinafter referred to as the Prevailing Wage Class.

43.    The persons in the Prevailing Wage Class identified above are so numerous that joinder of all members is impracticable.

44.    Although the precise number of such persons is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the control of the Prime Contractor Defendant and Subcontractor Defendants.

45.    Upon information and belief, there are in excess of forty (40) members of the Prevailing Wage Class during the Prevailing Wage Class Period.

46.    There are questions of law and fact common to the claims of Plaintiffs and the claims of the Prevailing Wage Class, including (1) whether the Subcontractor Defendants had a corporate policy of failing to pay the appropriate New York City prevailing wage rates and corresponding prevailing wage overtime rates, as required for projects that receive public financing;

and (2) whether the Prime Contractor Defendant had a corporate policy of failing to ensure that the Subcontractor Defendants on the Public Works Projects paid the appropriate New York City prevailing wage rates and corresponding prevailing wage overtime rates, as required for projects that receive public financing, to workers employed thereon.

47.    The claims of Plaintiffs are typical of the claims of the Prevailing Wage Class, and Plaintiffs will fairly and adequately represent the Prevailing Wage Class. There are no conflicts between Plaintiffs, and the members of the Prevailing Wage Class and Plaintiffs' counsel are experienced in handling class litigation.

48.    The Fifth Cause of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2). Prime Contractor Defendant and Subcontractor Defendants have acted or refused to act on grounds generally applicable to the Prevailing Wage Class by failing to pay at the prevailing wage rates and becoming unjustly enriched, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Prevailing Wage Class as a whole.

49.    The Fifth Cause of Action are also properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Prevailing Wage Class that predominate over any questions solely affecting individual members of the Prevailing Wage Class, including but not limit

50.    ed to:

   a.    whether Prime Contractor Defendant and/or Subcontractor Defendants breached contracts with local, state, and/or federal governmental entities by failing to pay Plaintiffs and the members of the Prevailing Wage Class, who were third-party beneficiaries of such contracts, at New York City prevailing wage rates;

b.   whether Prime Contractor Defendant and Subcontractor Defendants failed and/or refused to pay Plaintiffs and the members of the Prevailing Wage Class overtime wages at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day;

c.   whether Prime Contractor Defendant and Subcontractor Defendants failed and/or refused to pay Plaintiffs and the members of the Prevailing Wage Class supplemental benefits on prevailing wage jobs as required by the New York City prevailing wage schedules; and

d.   whether Prime Contractor Defendant and Subcontractor Defendants were unjustly enriched by failing to pay Plaintiffs and the Prevailing Wage Class at prevailing wage rates on prevailing wage jobs.

51.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of this case where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

### **FACTS**

52.    At all relevant times, Garner Environmental Services, acting as the Prime Contractor on Public Works Projects, retained Lola's Cleaning Service as the subcontractor to perform cleaning services at a migrant shelter located at 825 East 141st Street, Bronx, New York.

53.    At all relevant times herein, defendants Bermudez Ortega LLC. (d/b/a Bermudez Ortega Contractors), Lola's Brunch, LLC. (d/b/a Lola's B Environment Solutions), LB Environment Cleaning Solutions Inc (d/b/a LB Environment Cleaning Solutions Inc), Edwin Bermudez and Indhira Ortega (collectively, the "Subcontractor Defendants") employed Plaintiffs to perform Public Work Projects, including cleaning services at a migrant shelter located at 825 East 141st Street, Bronx, New York.

54.    Defendants Indhira Ortega and/or Edwin Bermudez hired each plaintiff and set each plaintiff's work schedule during their employment by the Subcontractor Defendants.

55.    Defendants Indhira Ortega and/or Edwin Bermudez set each plaintiff rate of compensation and arranged for each plaintiff to be paid via direct deposit during their employment by the Subcontractor Defendants.

56.    "Miguel," a manager of the Subcontractor Defendants' cleaning services business, supervised the plaintiffs on a daily basis during their employment by the defendants.

57.    Plaintiffs' work during their employment by Subcontractor Defendants was performed at the migrant shelter located at 825 E. 141 Street, Bronx, New York. Plaintiffs were employed by the Subcontractor Defendants as housekeepers of cleaning corporations where the Subcontractor Defendants and Prime Contractor Defendant controlled a publicly funded cleaning project of the asylum located at 825 East 141 Street, Bronx, NY 10454.

*Individual Plaintiffs*

*Plaintiff Mario Mera Romero*

58.  Plaintiff Mera was employed by Defendants from approximately March 3, 2025 until on or about July 11, 2025.

59. Defendants employed Plaintiff Mera as a housekeeper of a government shelter located at 825 E. 141 Street, Bronx, New York 10454.

60. Plaintiff Mera work has been performed in the normal course of the Subcontractor Defendants' business, was integrated into the business of Subcontractor Defendants and did/does not involve executive or administrative responsibilities.

61. Plaintiff Mera regularly handled goods in interstate commerce, such as cleaning materials and other supplies produced outside the State of New York.

62. Plaintiff Mera's work duties required neither discretion nor independent judgment.

63. At all relevant times herein, Plaintiff Mera was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

64. Throughout his employment with Defendants, Plaintiff Mera regularly worked in excess of 40 hours per week.

65. From approximately March 3, 2025 until on or about July 11, 2025, Plaintiff Mera worked from approximately 7:00 a.m. until on or about 7:00 p.m., six days a week three weeks per month and seven days a week one week per month (typically 72 to 84 hours per week).

66. Throughout his employment, Defendants paid Plaintiff Mera his wages by direct deposit.

67. From approximately March 3, 2025 until on or about July 11, 2025, Defendants paid Plaintiff Mera $16.50per hour.

68. As a result, at times Plaintiff Mera's effective rate of pay per hour at times below the statutory New York City minimum wage in effect at relevant times.

69. Defendants required Plaintiff Mera to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

70. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mera regarding prevailing wages, overtime wages, and wages under the FLSA and NYLL.

71. Defendants did not provide Plaintiff Mera an accurate statement of wages, as required by NYLL 195(3).

72. Defendants did not give any notice to Plaintiff Mera, in English and in Spanish (Plaintiff Mera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

73. As a result of Defendants' failure to provide Plaintiff Mera with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Wilfrido Martinez*

74. Plaintiff Martinez was employed by Defendants from approximately February 10, 2024 until on or about July 24, 2025.

75. Defendants employed Plaintiff Martinez as a housekeeper of a government shelter located at 825 E. 141 Street, Bronx, New York 10454.

76. Mr. Marinez's  primary job duties during his employment by the Subcontractor Defendants was to perform cleaning services.

77. Mr. Martinez's work was performed in the normal course of the Subcontractor Defendants' business, was integrated into the business of Subcontractor Defendants, and did/does

not involve executive or administrative responsibilities.

78.    At all relevant times herein, Mr. Martinez  was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

79.   Plaintiff Martinez regularly handled goods in interstate commerce, such as cleaning materials and other supplies produced outside the State of New York.

80.   Plaintiff Martinez's work duties required neither discretion nor independent judgment.

81.   Throughout his employment with Defendants, Plaintiff Martinez regularly worked in excess of 40 hours per week.

82.   From approximately February 10, 2025 until on or about May 10, 2025, Plaintiff Martinez worked from approximately 7:00 a.m. until on or about 7:00 p.m., six days a week (typically 72 hours per week).

83.   From approximately May 10, 2025 until on or about July 24, 2025, Plaintiff Martinez worked from approximately 7:00 a.m. until on or about 7:00 p.m., four days a week (typically 48 hours per week).

84.   From approximately February 10, 2025 until on or about July 24, 2025, Defendants paid Plaintiff Martinez his wages by direct deposit.

85.   From approximately February 10, 2025 until on or about July 24, 2025, Defendants paid Plaintiff Martinez $16.50 per hour.

86.   As a result, Plaintiff Martinez's  effective rate of pay was below the statutory New York City minimum wage in effect at relevant times.

87.    Defendants required Plaintiff Martinez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

88.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Martinez regarding prevailing wages, overtime wages, and wages under the FLSA and NYLL.

89.    Defendants did not provide Plaintiff Martinez an accurate statement of wages, as required by NYLL 195(3).

90.    Defendants did not give any notice to Plaintiff Martinez, in English and in Spanish (Plaintiff Martinez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

91.    As a result of Defendants' failure to provide Plaintiff Martinez with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff William Steven Duque Forero*

92.    Plaintiff Duque was employed by Defendants from approximately June 16, 2025 until on or about July 27, 2025.

93.    Defendants employed Plaintiff Duque as a housekeeper of a government shelter located at 825 E. 141 Street, Bronx, New York 10454.

94.    Plaintiff Dugue's work has been performed in the normal course of the Subcontractor Defendants' business, was integrated into the business of the Subcontractor Defendants, and did/does not involve executive or administrative responsibilities.

95.    At all relevant times herein, during his employment by the Subcontractor

Defendants, Plaintiff Duque  has been an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

96.  Plaintiff Duque regularly handled goods in interstate commerce, such as cleaning materials and other supplies produced outside the State of New York.

97.  Plaintiff Duque's work duties required neither discretion nor independent judgment.

98.  Throughout his employment with Defendants, Plaintiff Duque regularly worked in excess of 40 hours per week.

99.  From approximately June 16, 2025 until on or about July 27, 2025, Plaintiff Duque worked from approximately 2:00 p.m. until on or about 10:00 p.m. six days a week for three weeks and five days a week for two weeks (typically 40 to 48 hours per week).

100. Throughout his employment, Defendants paid Plaintiff Duque his wages by direct deposit.

101. From approximately June 16, 2025 until on or about July 27, 2025, Defendants paid Plaintiff Duque $16.50 per hour.

102.  As a result, Plaintiff Duque's effective rate of pay was below the statutory New York City minimum wage in effect at relevant times.

103. Defendants required Plaintiff Duque to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

104. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Duque regarding prevailing wages, overtime wages, and wages under the FLSA and NYLL.

105. Defendants did not provide Plaintiff Duque an accurate statement of wages, as required by NYLL 195(3).

106.   Defendants did not give any notice to Plaintiff Duque, in English and in Spanish (Plaintiff Duque's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

107.   As a result of Defendants' failure to provide Plaintiff Duque with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Joffre Laya Yamarte*

108.   Plaintiff Laya was employed by Defendants from approximately February 22, 2025 until on or about June 22, 2025.

109. Defendants employed Plaintiff Laya as a housekeeper of a government shelter located at 825 E. 141 Street, Bronx, New York 10454.

110.   .Plaintiff Laya's  work has been performed in the normal course of the Subcontractor Defendants' business, was integrated into the business of the Subcontractor Defendants, and did/does not involve executive or administrative responsibilities.

111.   At all relevant times herein during his employment, Plaintiff Laya  has been an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

112. Plaintiff Laya regularly handled goods in interstate commerce, such as cleaning materials and other supplies produced outside the State of New York.

113. Plaintiff Laya's work duties required neither discretion nor independent judgment.

114. Throughout his employment with Defendants, Plaintiff Laya regularly worked in excess of 40 hours per week.

115. From approximately February 22, 2025 until on or about June 22, 2025, Plaintiff Laya worked from approximately 7:00 a.m. until on or about 7:00 p.m., six days a week two weeks per month and five days a week two weeks per month (typically 60 to 72 hours per week).

116. Throughout his employment, Defendants paid Plaintiff Laya his wages by direct deposit.

117. From approximately February 22, 2025 until on or about June 22, 2025, Defendants paid Plaintiff Laya $16.50 per hour.

118. As a result, Plaintiff Laya's effective rate of pay was below the statutory New York City minimum wage in effect at relevant times.

119. Defendants required Plaintiff Laya to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

120. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Laya regarding prevailing wages, overtime wages, and wages under the FLSA and NYLL.

121. Defendants did not provide Plaintiff Laya an accurate statement of wages, as required by NYLL 195(3).

122. Defendants did not give any notice to Plaintiff Laya, in English and in Spanish (Plaintiff Laya's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

123. As a result of Defendants' failure to provide Plaintiff Laya with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Cristian Olivero Sanchez*

124.    Plaintiff Olivero was employed by Defendants from approximately January 2025 until on or about July 1, 2025.

125.    Defendants employed Plaintiff Olivero as a housekeeper of a government shelter located at 825 E. 141 Street, Bronx, New York 10454.

126.    Plaintiff Olivero's work has been performed in the normal course of the Subcontractor Defendants' business, was integrated into the business of the Subcontractor Defendants, and did/does not involve executive or administrative responsibilities.

127.    At all relevant times herein during his employment, Mr. Olivero has been an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

128. Plaintiff Olivero regularly handled goods in interstate commerce, such as cleaning materials and other supplies produced outside the State of New York.

129. laintiff Olivero's work duties required neither discretion nor independent judgment.

130. Throughout his employment with Defendants, Plaintiff Olivero regularly worked in excess of 40 hours per week.

131. From approximately January 2025 until on or about February 2025, Plaintiff Olivero worked from approximately 7:00 p.m. until on or about 7:00 a.m. six days a week (typically 72 hours per week).

132. From approximately March 2025 until on or about April 2025, Plaintiff Olivero worked from approximately 7:00 p.m. until on or about 7:00 a.m. five days a week (typically 60 hours per week).

133. From approximately May 2025 until on or about June 2025, Plaintiff Olivero worked from approximately 7:00 p.m. until on or about 7:00 a.m. four days a week (typically 48 hours per week).

134. From approximately June 2025 until on or about July 2025, Plaintiff Olivero worked from approximately 7:00 p.m. until on or about 7:00 a.m. three days a week (typically 36 hours per week).

135. Throughout his employment, Defendants paid Plaintiff Olivero his wages by direct deposit.

136. From approximately January 2025 until on or about July 1, 2025, Defendants paid Plaintiff Olivero $16.50 per hour.

137. As a result, at times Plaintiff Olivero's effective rate of pay was below the statutory New York City minimum wage in effect at relevant times.

138. Defendants required Plaintiff Olivero to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

139. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Olivero regarding prevailing wages, overtime wages, and wages under the FLSA and NYLL.

140. Defendants did not provide Plaintiff Olivero an accurate statement of wages, as required by NYLL 195(3).

141. Defendants did not give any notice to Plaintiff Olivero, in English and in Spanish (Plaintiff Olivero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

142.    As a result of Defendants' failure to provide Plaintiff Olivero with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Sergio Carvajal*

143.    Plaintiff Carvajal was employed by Defendants from approximately May 11, 2025 until on or about June 22, 2025.

144.    Defendants employed Plaintiff Carvajal as a housekeeper of a government shelter located at 825 E. 141 Street, Bronx, New York 10454.

145.    Mr. Carvajal's  work has been performed in the normal course of the Subcontractor Defendants' business, was integrated into the business of the Subcontractor Defendants, and did/does not involve executive or administrative responsibilities.

146.    At all relevant times herein during his employment, Mr. Carvajal has been an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

147.    Plaintiff Carvajal regularly handled goods in interstate commerce, such as cleaning materials and other supplies produced outside the State of New York.

148.    Plaintiff Carvajal's work duties required neither discretion nor independent judgment.

149.    Throughout his employment with Defendants, Plaintiff Carvajal regularly worked in excess of 40 hours per week.

150.    From approximately May 11, 2025 until on or about June 22, 2025, Plaintiff Carvajal worked from approximately 7:00 p.m. until on or about 7:00 a.m., five days a week four

and four days a week for two weeks (typically 48 to 60 hours per week).

151.    Throughout his employment, Defendants paid Plaintiff Carvajal his wages by direct deposit.

152.    From approximately May 11, 2025 until on or about June 22, 2025, Defendants paid Plaintiff Carvajal $16.50 per hour.

153.    As a result, at times Plaintiff Carvajal's  effective rate of pay was below the statutory New York City minimum wage in effect at relevant times.

154.    Defendants required Plaintiff Carvajal to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

155.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Carvajal regarding prevailing wages, overtime wages, and wages under the FLSA and NYLL.

156.    Defendants did not provide Plaintiff Carvajal an accurate statement of wages, as required by NYLL 195(3).

157.    Defendants did not give any notice to Plaintiff Carvajal, in English and in Spanish (Plaintiff Carvajal's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

158.    As a result of Defendants' failure to provide Plaintiff Carvajal with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Wuilley Yeen Zabala Nieto*

159. Plaintiff Zabala was employed by Defendants from approximately March 9, 2025 until on or about April 16, 2025.

160. Defendants employed Plaintiff Zabala as a housekeeper of a government shelter located at 825 E. 141 Street, Bronx, New York 10454.

161. Mr. Zabala's work has been performed in the normal course of the Subcontractor Defendants' business, was integrated into the business of the Subcontractor Defendants, and did/does not involve executive or administrative responsibilities.

162. At all relevant times herein during his employment, Mr. Zaala  has been an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

163. Plaintiff Zabala regularly handled goods in interstate commerce, such as cleaning materials and other supplies produced outside the State of New York.

164. Plaintiff Zabala's work duties required neither discretion nor independent judgment.

165. Throughout his employment with Defendants, Plaintiff Zabala regularly worked in excess of 40 hours per week.

166. From approximately March 9, 2025, until on or about March 15, 2025, Plaintiff Zabala worked from approximately 7:00 a.m. until on or about 7:00 p.m., 4 days a week (typically 48 hours per week).

167. From approximately March 16, 2025, until on or about March 22, 2025, Plaintiff Zabala worked from approximately 7:00 a.m. until on or about 7:00 p.m., 5 days a week (typically 60 hours per week).

168. From approximately March 23, 2025, until on or about April 4, 2025, Plaintiff Zabala worked from approximately 7:00 a.m. until on or about 7:00 p.m., 6 days per week (typically 72 hours per week).

169. From approximately April 6, 2025, until on or about April 10, 2025, Plaintiff Zabala worked from approximately 7:00 a.m. until on or about 7:00 p.m., 5 days a week (typically 60 hours per week).

170. From approximately April 11, 2025, until on or about April 16, 2025, Plaintiff Zabala worked from approximately 7:00 a.m. until on or about 7:00 p.m., 6 days a week (typically 72 hours per week).

171. Throughout his employment, Defendants paid Plaintiff Zabala his wages by personal check.

172. From approximately March 9, 2025, until on or about April 16, 2025, Defendants paid Plaintiff Zabala $16.50 per hour.

173. As a result, Plaintiff Zabala's effective rate of pay has been below the statutory New York City minimum wage in effect at relevant times.

174. Defendants required Plaintiff Zabala to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

175. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Zabala regarding prevailing wages, overtime wages, and wages under the FLSA and NYLL.

176. Defendants did not provide Plaintiff Zabala an accurate statement of wages, as required by NYLL 195(3).

177.    Defendants did not give any notice to Plaintiff Zabala, in English and in Spanish (Plaintiff Zabala's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

178.    As a result of Defendants' failure to provide Plaintiff Zabala with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

**FAILURES OF THE SUBCONTRACTOR DEFENDANTS AS TO ALL PLAINTIFFS**

179.    Subcontractor Defendants' failure to pay Plaintiffs an amount at least equal to the New York City minimum wage in effect during relevant time periods was willful and lacked a good faith basis because Defendants have been aware of the schedule of hours they set for Plaintiffs to work as well the plaintiffs' rates of compensation.

180.    Subcontractor Defendants failed to pay Plaintiffs any overtime "bonus" for hours worked beyond 40 hours in a workweek, in violation of the FLSA, the New York Labor Law, and the supporting New York State Department of Labor regulations. Subcontractor Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees. At all times relevant to this Complaint, Subcontractor Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the prevailing wage rate and overtime compensation required by federal and state law and regulations.

181.    Subcontractor Defendants' failure to pay Plaintiffs the overtime bonus for overtime hours they worked was willful and lacked a good faith basis because Subcontractor Defendants have been aware that the plaintiffs have each typically been working in excess of 40 hours per week.

182.    Subcontractor Defendants also failed to pay Plaintiffs an additional hour's pay at the minimum wage for each day they worked a shift lasting in excess of ten hours from start to finish ("spread-of-hours premium").

183.    While the Subcontractor Defendants have used a phone-based time-keeping method to keep track of Plaintiffs' clock-in and clock-out times each day during their employment, Plaintiffs have never been given any summary of hours worked and hours paid during their employment by the Subcontractor Defendants.

184.    The Subcontractor Defendants failed to provide each of Plaintiffs with a written notice providing the information required by the Wage Theft Prevention Act – including, *inter alia*, the Subcontractor Defendants' contact information, the regular and overtime rates, and intended allowances claimed – and failed to obtain each plaintiff's signature acknowledging the same, upon each plaintiff's hiring or at any time thereafter, in violation of the Wage Theft Prevention Act in effect at the time. This failure has harmed each of Plaintiffs financially by depriving them of being informed of their lawfully applicable rates of pay during their employment.

185.    Defendants failed to provide Plaintiffs with accurate wage notices and wage statements as required by NYLL §§ 195(1) and 195(3), including by failing to correctly identify all employer entities, failing to state Plaintiffs' correct regular rate of pay, failing to identify applicable prevailing wage classifications, and failing to reflect the correct overtime and prevailing wage rates applicable to Plaintiffs' work.

186.    As a direct and proximate result of Defendants' failure to provide accurate wage notices and wage statements, Plaintiffs suffered concrete and particularized harm, including confusion regarding who employed them, uncertainty as to their lawful rate of pay, inability to calculate overtime and prevailing wage entitlements, and delayed assertion of wage claims.

187.    Because Defendants' wage statements did not accurately reflect Plaintiffs' lawful rates of pay or hours worked, Plaintiffs were unable to determine that they were being underpaid and therefore continued working for Defendants without realizing they were entitled to additional wages, including overtime premiums and prevailing wage compensation.

188.    Plaintiffs further incurred out-of-pocket costs and burdens as a result of Defendants' violations, including the time and expense required to reconstruct payroll records, obtain bank and pay records, consult legal counsel, and investigate the identity of their true employer(s).

189.    The injuries suffered by Plaintiffs were not merely technical or informational, but resulted in real economic harm, delayed payment of wages, and loss of statutory protections intended by the Wage Theft Prevention Act.

190.    The Subcontractor Defendants failed to provide Plaintiffs with weekly records of their total compensation and total hours worked, in violation of the Wage Theft Prevention Act, causing each of Plaintiffs financial harm resulting from the failure of Subcontractor Defendants to inform each of the Plaintiffs of their hours worked and hours paid.

191.    Upon information and belief, throughout each of the plaintiffs' employment, both before that time (throughout the Collective Action Period) and continuing until today, Subcontractor Defendants have likewise employed other individuals like the plaintiffs (the "Collective Action Members") in positions at defendants' sub-contracting company that required little skill, no capital investment, and with duties and responsibilities that did not include any managerial responsibilities or the exercise of independent judgment.

192.    Subcontractor Defendants applied the same employment policies, practices, and procedures to all Collective Action Members, including policies, practices, and procedures with respect to the payment of minimum wages and overtime.

193.    Upon information and belief, Subcontractor Defendants have failed to pay these other individuals at a rate at least equal to the minimum wage, in violation of the FLSA and the New York Labor Law.

194.    Upon information and belief, these other individuals have worked in excess of forty hours per week, yet Subcontractor Defendants have likewise failed to pay them overtime compensation of one-and-one-half times their regular hourly rate in violation of the FLSA and the New York Labor Law.

195.    Upon information and belief, these other individuals were not provided with required wage notices or weekly wage statements as specified in New York Labor Law §§ 195.1, 195.3, and the Wage Theft Prevention Act.

196.    Upon information and belief, while the Subcontractor Defendants employed the plaintiffs and the Collective Action Members, and through all relevant time periods, the Subcontractor Defendants failed to maintain accurate and sufficient time records or provide accurate records to employees.

197.    Upon information and belief, while the Subcontractor Defendants employed the plaintiffs and the Collective Action Members, and through all relevant time periods, the Subcontractor Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA or New York Labor Law.

198.    The cleaning and maintenance services performed by Plaintiffs were performed on a public work within the meaning of NYLL § 220, including work performed at publicly funded emergency and migrant shelters operated pursuant to contracts with the New York City Department of Homeless Services.

199.    Defendants' obligation to pay prevailing wages arose by operation of law under

NYLL § 220 and § 230, and such obligation is non-waivable and applies to all contractors and subcontractors performing public work, regardless of whether prevailing wage language is expressly repeated in downstream subcontracts.

200.    Any failure by Defendants to include prevailing wage language in a subcontract does not relieve Defendants of their statutory obligation to pay prevailing wages and supplemental benefits to workers employed on public works projects.

201.    The prime contracts governing the Public Works Projects expressly required compliance with NYLL § 220 and the payment of prevailing wages and supplemental benefits.

202.    Defendants' subcontract agreements incorporated the prime contract requirements and/or required compliance with all applicable federal, state, and local labor laws, including New York's prevailing wage laws.

203.    Plaintiffs were intended third-party beneficiaries of the prime contracts governing the Public Works Projects, which expressly required payment of prevailing wages and supplemental benefits to workers employed thereon.

204.    Upon information and belief, Defendants billed the City of New York and/or public agencies for Plaintiffs' labor at rates consistent with prevailing wage schedules, GSA labor rates, or other government-approved labor reimbursement rates, while paying Plaintiffs only minimum wage or non-prevailing rates.

205.    Defendants retained the difference between the amounts billed to the City for Plaintiffs' labor and the lesser amounts actually paid to Plaintiffs, resulting in Defendants' unjust enrichment and Plaintiffs' underpayment.

206.    Defendants' billing practices demonstrate that Plaintiffs' work was treated as prevailing wage labor for reimbursement purposes, further confirming Defendants' statutory

obligation to pay prevailing wages.

**FAILURES OF THE SUBCONTRACTOR DEFENDANTS AND THE PRIME**

**CONTRACTOR DEFENDANT AS TO ALL PLAINTIFFS**

207.     The Subcontractor Defendants and the Prime Contractor Defendant were required to compensate Plaintiffs, and others similarly situated, who performed labor on Public Works Projects, at the prevailing wage rates applicable to the localities where the work was performed. Such prevailing wage rates are determined by reference to the schedules issued by the New York State Department of Labor and the New York City Comptroller, which reflect the wages and supplemental benefits set forth in collective bargaining agreements between *bona fide* labor organizations and private-sector employers engaged in similar work.

208.     At all times relevant herein, depending on the particular contract, locality, and type of work performed, the prevailing regular hourly wage for work performed by Plaintiffs for the Subcontractor Defendants ranged from approximately $40.70 to $49.00.

209.     For hours worked in excess of forty hours per week, the prevailing wage laws required payment overtime bonus at one-and-one-half times the prevailing regular rate, or in some cases, double time, and in certain counties together with applicable supplemental benefits.

210.     Accordingly, at all times relevant herein, the Subcontractor Defendants failed to pay Plaintiffs prevailing wages and the corresponding overtime premiums mandated by the New York Labor Law, including NYLL §§ 220 and 230, and the regulations promulgated thereunder, to which Plaintiffs were entitled performing on Public Works Projects.

211.     At all relevant times, the Prime Contractor remained jointly and severally liable pursuant to New York Labor Law § 220-b(2)(a)(1), for ensuring that all subcontractors on its Public Works Projects paid to their employees applicable New York City prevailing wages, corresponding

overtime premiums and supplemental benefits required by law.

212.    Defendant Garner Environmental Services exercised control over Plaintiffs' employment, including approving staffing levels, work schedules, and hours worked on the Public Works Projects.

213.    Garner Environmental Services maintained authority to approve or reject workers assigned to the Public Works Projects and coordinated directly with subcontractor supervisors regarding Plaintiffs' work.

214.    Garner Environmental Services required compliance with payroll and reporting requirements, including submission of payroll information and certifications related to Plaintiffs' labor.

215.    As a result, Garner Environmental Services and the Subcontractor Defendants jointly employed Plaintiffs within the meaning of the FLSA and NYLL.

216.    NYLL § 220 imposes a non-waivable statutory obligation on all contractors and subcontractors performing public work, regardless of whether prevailing wage language is expressly repeated in downstream subcontracts.

217.    Therefore, the Prime Contractor Defendant is jointly and severally liable for the Subcontractor Defendants' violations described herein.

218.    Upon information and belief, Defendant Garner Environmental Services, Inc. entered into Contract No. 20238804225 and related agreements with the City of New York and/or the New York City Department of Homeless Services ("DHS") for the operation, maintenance, cleaning, and servicing of publicly funded shelter facilities, including the migrant shelter located at 825 East 141st Street, Bronx, New York (the "Public Works Contracts").

219.    The Public Works Contracts were funded in whole or in part by public monies and

required the performance of ongoing cleaning, janitorial, maintenance, sanitation, and related labor at City-operated shelter facilities.

220.    The work performed pursuant to the Public Works Contracts constituted "public works" within the meaning of New York Labor Law § 220, as it involved labor performed in connection with the maintenance and operation of publicly funded facilities owned, operated, or controlled by the City of New York.

### a.  **Statutory Prevailing Wage – Operation of Law**

221.    Pursuant to New York Labor Law § 220, all laborers, workers, and mechanics employed on the Public Works Contracts were required, by operation of law, to be paid not less than the prevailing rates of wages and supplemental benefits as determined by the New York City Comptroller, regardless of whether such requirements were expressly restated in the written contract documents.

222.    Upon information and belief, the Public Works Contracts incorporated and required compliance with New York Labor Law § 220, including the obligation to pay prevailing wages and supplemental benefits and to maintain and submit certified payroll records reflecting such payments.

223.    Defendant Garner Environmental Services, Inc., as the prime contractor on the Public Works Contracts, was statutorily obligated under New York Labor Law § 220-b(2)(a)(1) to ensure that all subcontractors on the projects paid workers the applicable prevailing wages and supplemental benefits and is jointly and severally liable for any failure to do so.

### b.  **Subcontractor + Joint Liability**

224.    Defendant Garner Environmental Services, Inc. subcontracted portions of the work

required under the Public Works Contracts to Defendant LB Environment Cleaning Solutions, Inc. d/b/a Lola's Cleaning Service and related Bermudez/Ortega entities (collectively, the "Subcontractor Defendants").

225.    Plaintiffs were employed by the Subcontractor Defendants to perform cleaning, janitorial, maintenance, and related labor at the Public Works site located at 825 East 141st Street, Bronx, New York, in furtherance of Garner Environmental Services, Inc.'s contractual obligations to the City of New York.

226.    At all relevant times, Garner Environmental Services, Inc. exercised control over the worksite, schedules, scope of services, and performance standards at the shelter facility and knowingly permitted Plaintiffs to perform covered labor without receiving prevailing wages and supplemental benefits required by law.

**c.  Covered Work/ Classification**

227.    Plaintiffs' job duties included, but were not limited to, cleaning and sanitizing common areas, bathrooms, sleeping quarters, and facilities; handling waste and refuse; moving furniture and equipment; setting up and breaking down shelter areas; and performing related maintenance tasks customarily classified under New York City prevailing wage schedules as Laborer, Cleaner, Janitor, or similar covered classifications.

228.    The labor performed by Plaintiffs was manual, physical, and non-exempt in nature and falls squarely within the categories of work protected by Article 8 of the New York Labor Law.

**d.  Failure to Pay Prevailing Wages**

229.    Defendant Garner Environmental Services, Inc. subcontracted portions of the work required under the Public Works Contracts to Defendant LB Environment Cleaning Solutions, Inc.

d/b/a Lola's Cleaning Service and related Bermudez/Ortega entities (collectively, the "Subcontractor Defendants").

230.    Plaintiffs were employed by the Subcontractor Defendants to perform cleaning, janitorial, maintenance, and related labor at the Public Works site located at 825 East 141st Street, Bronx, New York, in furtherance of Garner Environmental Services, Inc.'s contractual obligations to the City of New York.

231.    At all relevant times, Garner Environmental Services, Inc. exercised control over the worksite, schedules, scope of services, and performance standards at the shelter facility and knowingly permitted Plaintiffs to perform covered labor without receiving prevailing wages and supplemental benefits required by law.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT - OVERTIME**
**AGAINST SUBCONTRACTOR DEFENDANTS**

232.    Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

233.    At all relevant times, the Subcontractor Defendants employed Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

234.    At all relevant times, the Subcontractor Defendants had a policy and practice of refusing to pay overtime compensation to their employees for hours they worked in excess of forty hours per workweek.

235.    As a result of Subcontractor Defendants' willful failure to compensate their employees, including Plaintiffs and the Collective Action Members, at a rate at least one-and-one-half times the regular rate of pay for work performed in excess of forty hours per workweek, the Subcontractor Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et

seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

236.    The foregoing conduct, as alleged, constituted a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 260.

237.    Due to the Subcontractor Defendants' FLSA violations, Plaintiffs and the Collective Action Members are entitled to recover from the Subcontractor Defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW - OVERTIME
### AGAINST SUBCONTRACTOR DEFENDANTS

238.    Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

239.    At all relevant times, Plaintiffs were employed by the Subcontractor Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

240.    Subcontractor Defendants willfully violated Plaintiffs' rights by failing to pay them overtime compensation at rates at least one-and-one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek in violation of the New York Labor Law §§ 650 et seq. and its supporting regulations.

241.    Subcontractor Defendants' failure to pay overtime was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

242.    Due to the Subcontractor Defendants' New York Labor Law violations, Plaintiffs and the Collective Action Members are entitled to recover from the Subcontractor Defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs

- 37 -

and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE NOTICE**
**OF THE NEW YORK LABOR LAW**

243.        Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

244.        Defendants failed to provide Plaintiffs with a written notice, in English and in

Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any,

claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay

day designated by the employer; the name of the employer; any "doing business as" names used by

the employer; the physical address of the employer's main office or principal place of business, and

a mailing address if different; and the telephone number of the employer, as required by NYLL

§195(1).

245.        As a result of Defendants' failure to furnish an accurate wage notice to Plaintiffs,

Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia,

NYLL § 195.

246.        Defendants are liable to each Plaintiff in the amount of $5,000, together with costs

and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE WAGE STATEMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW**

247.        Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein

248.        With each payment of wages, Defendants failed to provide Plaintiffs with an

accurate statement listing each of the following: the dates of work covered by that payment of

wages; name of employee; name of employer; address and phone number of employer; rate or rates

of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

249.    As a result of Defendants' failure to furnish accurate statements to Plaintiffs Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

250.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### FIFTH CAUSE OF ACTION
### THIRD PARTY BENEFICIARY BREACH OF CONTRACT – PREVAILING WAGES AGAINST PRIME CONTRACTOR DEFENDANT AND SUBCONTRACTOR DEFENDANTS

251.    Plaintiffs, on behalf of themselves and all Prevailing Wage Class Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

252.    At all relevant times, Plaintiffs were employed by the Subcontractor Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

253.    The Prime Contractor Defendant and Subcontractor Defendants willfully violated Plaintiffs' rights by failing to pay them at the prevailing wage rates required under NYLL § 220 and the public works contracts with entities such as the Department of Emergency Management, of which Plaintiffs were third-party beneficiaries.

254.    Due to the Prime Contractor Defendant and Subcontractor Defendants' violations, Plaintiffs and the Prevailing Wage Class Members are entitled to recover unpaid prevailing wages, overtime at prevailing rates, liquidated damages, interest, reasonable attorneys' fees, and costs.

### SIXTH CAUSE OF ACTION
### NEW YORK LABOR LAW – SPREAD-OF-HOURS
### AGAINST SUBCONTRACTOR DEFENDANTS

255.    Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

256.    At all relevant times, Plaintiffs were employed by the Subcontractor Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

257.    The Subcontractor Defendants willfully violated Plaintiffs' rights by failing to pay them an additional hour's pay at the minimum wage for each day they worked a shift lasting in excess of ten hours from start to finish, in violation of the New York Labor Law §§ 650 et seq. and its supporting regulations.

258.    The Subcontractor Defendants' failure to pay the "spread-of-hours" premium was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 163 and supporting regulations.

259.    Due to the Subcontractor Defendants' New York Labor Law violations, Plaintiffs and the Collective Action Members are entitled to recover from Subcontractor Defendants their unpaid compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

   a.    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this

action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

c.   An injunction against the Prime Contractor Defendant and Subcontractor Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

d.   A compensatory award of unpaid overtime compensation, at the statutory overtime premium rate, due under the FLSA and the New York Labor Law;

e.   A compensatory award of unpaid minimum wage compensation, at the applicable statutory rate, due under the New York Labor Law;

f.   A compensatory award of unpaid spread-of-hours compensation, at the applicable statutory rate, due under the New York Labor Law;

g.   Compensatory damages for failure to pay prevailing wages and prevailing wage overtime pursuant to NYLL § 220 and related common law claims;

h.   An award of liquidated damages as a result of the Subcontractor Defendants' willful failure to pay the statutory minimum wage and overtime compensation pursuant to 29 U.S.C. § 216;

i.   Liquidated damages for the Subcontractor Defendants' New York Labor Law violations;

j.    Statutory damages for the Subcontractor Defendants' violation of the New York Wage Theft Prevention Act;

k.    An award of liquidated damages as a result of the Prime Contractor Defendant and Subcontractor Defendants willful failure to pay the prevailing wages pursuant to New York Labor Law;

l.    Back pay;

m.    Punitive damages;

n.    An award of prejudgment and post-judgment interest;

o.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

p.    Such other, further, and different relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        December 29, 2025

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    */s/ Michael Faillace*
       Michael Faillace [MF-8436]
       60 East 42nd Street, Suite 4510
       New York, New York 10165
       Telephone: (212) 317-1200
       Facsimile: (212) 317-1620
       *Attorneys for Plaintiffs*